UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 10-50713 |
| GULF FLEET HOLDINGS, INC., *et al.* | CHAPTER 11 |
| DEBTORS | (Jointly Administered w/ Case Nos. 10-50714, 10-50715, 10-50716, 10-50717, 10-50718, 10-50719, 10-50720, 10-50721, 10-50722, 10-50723) |

---

GULF FLEET HOLDINGS, INC., *et al.*

                         PLAINTIFFS          ADV. PROC. NO. 10-_____

v.

MICHAEL A. HILLMAN, *et al.*

                         DEFENDANTS

**OBJECTION TO CLAIMS NO. 44, 45, 46, 47 & 48 FILED ON BEHALF
OF MICHAEL HILLMAN, DARLENE HILLMAN, GRANT HILLMAN,
BENGAL BARGES, LLC, AND DMH LEASING INC. AND
COMPLAINT FOR EQUITABLE SUBORDINATION**

The Objection to Proofs of Claim and Complaint of Gulf Fleet Holdings, Inc., Gulf

Ocean Marine Services, LLC, Gulf Fleet Offshore, LLC, Gulf Fleet Management, LLC, Gulf

Fleet, LLC, Hercules Marine, LLC, Gulf Worker, LLC, and Star Marine, LLC (collectively, the

"*Debtors*" or "*Plaintiffs*"), which are the Debtors-in-Possession in the above-captioned jointly

administered bankruptcy cases, hereby states as follows:

## PARTIES

1.

Plaintiff, Gulf Fleet Holdings, Inc. ("*Holdings*"), is a Delaware corporation with its principal place of business in Lafayette, Louisiana.

2.

Plaintiffs, Gulf Fleet Offshore, LLC, Gulf Ocean Marine Services, LLC, Gulf Fleet Management, LLC, Gulf Fleet, LLC, Hercules Marine, LLC, Gulf Worker, LLC, Star Marine, LLC are all Louisiana limited liability companies, each with its principal place of business in Lafayette, Louisiana.

3.

Defendant, Michael A. Hillman ("*M. Hillman*"), is an individual domiciled in Lafayette, Louisiana.

4.

Defendant, Darlene Hillman ("*D. Hillman*") is an individual domiciled in Lafayette, Louisiana.

5.

Defendant, Grant M. Hillman ("*G. Hillman*") is an individual domiciled in Duson, Louisiana.

6.

Defendant, Bengal Barges, LLC ("*Bengal Barges*") is a Louisiana limited liability company with its principal place of business in Lafayette, Louisiana.

2

7.

Defendant, DMH Leasing Inc., ("*DMH Leasing*") is a Louisiana corporation with its principal place of business in Lafayette, Louisiana.

## JURISDICTION AND VENUE

8.

This Court has jurisdiction over the subject matter of this adversary proceeding under 28 U.S.C. §§157(b)(2)(A), (B), and (O) and under Bankruptcy Rule 7001(8). The matter is a core proceeding over which this Court has jurisdiction.

9.

Venue is proper in this District pursuant to 28 U.S.C. §§1408 & 1409.

## RELIEF SOUGHT

10.

M. Hillman, D. Hillman, and G. Hillman (collectively, the "*Hillman Claimants*"), Bengal Barges, and DMH Leasing each submitted proofs of claim in the above-captioned bankruptcy against Holdings for general unsecured claims, priority unsecured claims, and secured claims. The Debtors object to the claims insofar as 1) the proofs of claim are *prima facie* deficient and do not include adequate support of the alleged amount of the claims as required by Fed. R. Bankr. P. 3001; 2) the amounts asserted are subject to reduction under 11 U.S.C. §502; 3) to the extent that they assert pre-petition maritime lien claims, they fail to conform to the only authorized form for such claims pursuant to this Court's Order (**Case No. 10-50713; Docket No. 615**); and 4) even if valid, the proofs of claim are subject to set-off for substantial damages incurred by the Debtors arising from claims asserted by the Debtors against the Hillman Claimants in Adversary Proceeding No. 10-05042 pending before this Court.

3

11.

Additionally, to the extent that any of the amounts asserted in the aforementioned proofs of claim are allowed, the Debtors seek equitable subordination of the proofs of claim of the Hillman Claimants pursuant to 11 U.S.C. 510(b) & (c) insofar as 1) the Hillman Claimants engaged in inequitable conduct in relation to their employment with the Debtors, and 2) the proofs of claim seek damages arising out of that certain Purchase Agreement executed in May of 2007, which was a sale of securities within the meaning of 11 U.S.C. 510(b).

## FACTUAL BACKGROUND

12.

On May 14, 2010 (the "*Petition Date*"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Western District of Louisiana.

### *The Proofs of Claim*

13.

M. Hillman filed Proof of Claim No. 44 (the "*M. Hillman Proof of Claim*") in which he asserted the following claims:

a) General unsecured claims of $245,679.64 in unreimbursed expenses; $250,000 in wages allegedly due under his employment agreement with Holdings for the period from April, 2010, to April, 2011 pending in *Hillman et al v. Gulf Fleet Holdings, et al.*, Adv. No. 10-5042 (the "*Adversary No. 10-05042*"); $12,650,000 in unliquidated damages also pending in the Adversary No. 10-05042; undetermined amounts for defense and indemnity of claims against M. Hillman; and undetermined amounts for obligations

4

relating to certain promissory notes by and between M. Hillman and Gulf Fleet Tiger Acquisition, LLC.

b) Secured claim of $750.00 for equipment and services allegedly provided to the M/V *Gulf Carrier*

c) Priority unsecured claim of $270,833.34 for wages, commissions, and earned vacation

14.

Darlene Hillman filed Proof of Claim No. 45 (the "***D. Hillman Proof of Claim***") in which she asserted claims for $50,000 in wages and salary allegedly due under her employment agreement with Gulf Fleet Holdings, Inc. and $12,650,000 in unliquidated damages pending in Adversary No. 10-05042.

15.

Grant Hillman filed Proof of Claim No. 46 (the "***G. Hillman Proof of Claim***") in which he asserted general unsecured claims for $55,850.98 in commissions and wages allegedly due under his employment agreement with Gulf Fleet Holdings, Inc., as well as a secured claim for $6,900 for equipment and services allegedly provided to the M/V *Gulf Fury*.

16.

Bengal Barges filed Proof of Claim No. 47 (the "***Bengal Barges Proof of Claim***") in which it asserted a secured claim of $18,714.00 for equipment leased and goods sold.

17.

DMH Leasing, Inc. filed Proof of Claim No. 48 (the "***DMH Leasing Proof of Claim***") in which it asserted a general unsecured claim of $2,709.70. Additionally, DMH Leasing claimed "all rental payments from December 1, 2010 through February 28, 2016, and unpaid post petition rents and other amounts owed pursuant to the lease." Finally, the DMH Leasing Proof of Claim

5

asserted a claim for "damages to the structures located on the premises and/or any and all environmental damages."

<em><u>The Purchase Agreement</u></em>

18.

In February 2007, M. Hillman transferred his equity interest in Gulf Fleet Offshore L.L.C., Gulf Fleet Management, L.L.C., and Gulf Ocean Marine Services, L.L.C., to Holdings in February 2007 in exchange for securities and other value totaling nearly $63 Million. Specifically, pursuant to a written agreement (the ***"Purchase Agreement"***), M. Hillman and D. Hillman received 35,000 shares of common stock in Gulf Fleet Holdings, Inc. (then representing 35% ownership interest), the right to receive up to another 5,000 "Earn Out" shares (as defined in the Purchase Agreement) of common stock in Gulf Fleet; $23,500,000 in cash (as adjusted pursuant to the terms of the Purchase Agreement); the pay-off of up to $30 Million in debt; and the assumption of 50% of $1,186,087 of debt secured by the vessel *Reel Cajun*.

19.

The M. Hillman Proof of Claim and D. Hillman Proof of Claim assert a claim for unliquidated damages in the amount of $12,650,000 arising from the Purchase Agreement.

20.

Along with the transfer of cash and securities contemplated by the Purchase Agreement, Holdings agreed to provide M. Hillman and his son, G. Hillman, executive positions with Holdings. In particular, the Purchase Agreement stated:

> As further inducement to the Purchasers and as a condition to the transactions contemplated hereby, Messrs. M. Hillman, G. Hillman, Jeff Klorer, Mike Tuttle, and Charlie Tizzard have agreed to enter into employment agreements with the Companies contemporaneously following the closing of the transactions

6

contemplated hereby, pursuant to which they will remain executive officers of the Companies.

Accordingly, in May 2007, M. Hillman entered into an employment agreement with Holdings (the "*M. Hillman Employment Agreement*") with Holdings as President. Also in May 2007, G. Hillman entered into an employment agreement with Holdings (the "*G. Hillman Employment Agreement*").

21.

The proofs of claim submitted by M. Hillman and G. Hillman in the above-captioned bankruptcy case are based in substantial part upon payments allegedly due under the two employment agreements, which were executed as a condition of the Purchase Agreement.

*M. Hillman's Pre-Bankruptcy Conduct as President*

22.

Following the commencement of M. Hillman's employment with Holdings, he undertook several dishonest, self-dealing activities which were detrimental to Holdings, the Debtors, and the Debtors' creditors.

23.

During his tenure as President of Holdings, and in addition to his agreed salary of $250,000, M. Hillman paid himself hundreds of thousands of dollars in sales and/or brokerage commissions, although there was no basis for such sales and/or brokerage commissions.

24.

Also prior to his resignation, M. Hillman forced the resignation of Peter Fortier, a successful Chief Operating Officer of Holdings, and other key personnel of the Debtors, and improperly encouraged and/or assisted such personnel to compete against the Debtors in

7

violation of their employment agreements with the Debtors. For example, M. Hillman provided letters to certain key sales personnel who intended to leave the Debtors to work for a competitor purporting to acknowledge that the Debtors breached the employees' employment contracts, thereby giving each such employee grounds to oppose the enforceability of the agreements and the restrictive covenants contained therein.

25.

Additionally, as President, M. Hillman repeatedly abused the company expense account for personal items and expenses unrelated to Holdings' business, including, but not limited to, directing Holdings to pay for his houseboat, his hunting camp, personal trips aboard his jet, and more than $70,000 for M. Hillman and his friends to attend the Super Bowl.

26.

M. Hillman used his position as President of Holdings not only to unjustly enrich himself, but also members of his family. Upon information and belief, M. Hillman provided his son, G. Hillman, with unwarranted salary increases. M. Hillman entered into a lease agreement for property owned by his wife's company, DMH Leasing, Inc., and continued to pay the full amount of the rent without protest despite the fact that the lessor failed to undertake basic landlord responsibilities such as fixing a leaking roof and maintaining the building's heating and cooling systems.

27.

Upon information and belief, in January 2010, and at other times prior to January 2010, M. Hillman deleted or directed other parties to delete proprietary electronically-stored data of the Debtors relating to the Debtors' internal communication and communication with the Debtors'

8

clients. Before completing the deletion of the data, M. Hillman directed that the same data be transferred to another storage medium for M. Hillman's personal and competitive purposes.

28.

Subsequently, M. Hillman admitted that the storage media in his possession may have contained proprietary data belonging to the Debtors' estates, but he refused to relinquish those media to the Debtors for review and recovery of their property. Consequently, the Debtors were required to engage in substantial litigation to protect their interests in and the integrity of the Debtors' own proprietary data.

**COUNT ONE: OBJECTION TO M. HILLMAN PROOF OF CLAIM**

29.

The Debtors reaver and re-allege all allegations contained in Paragraphs 1 through 28 above.

30.

The Debtors object to the M. Hillman Proof of Claim on the following grounds: 1) the M. Hillman Proof of Claim is *prima facie* deficient and does not include adequate support of the alleged amount of the claims; 2) the M. Hillman Proof of Claim is subject to reduction to the extent that any insider compensation claimed exceeds the reasonable value such professional services rendered; 3) proofs of claim are subject to set-off; 4) one or more of the claims asserted in the M. Hillman Proof of Claim are based upon a writing, but no such writing was attached to the M. Hillman Proof of Claim; 5) M. Hillman asserts a maritime lien claim, but did not submit a maritime lien proof of claim form as required by this Court's Order; and 6) the M. Hillman Proof of Claim contains duplicative claims.

*Basis No. 1: Prima Facie Deficient*

9

31.

The Debtors object to the M. Hillman Proof of Claim because the M. Hillman Proof of Claim asserts claims for which Debtors did not incur any liability to M. Hillman, and have no responsibility for such claims. *See* 11 U.S.C. §502(b)(1) ("the court . . . shall allow such claim in such amount, except to the extent that – such claim is unenforceable against the debtor . . . under any agreement or applicable law for a reason other than because such claim is contingent or unmatured …"). Further, in order for a proof of claim to be executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, it must satisfy (among other things) the requirements set forth in Rule 3001. One requirement applicable to secured claims requires that "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." Fed. R. Bankr.P. 3001(d).

32.

The amounts asserted for unreimbursed expenses, and equipment and services allegedly provided to the M/V *Gulf Carrier* are *prima facie* invalid as M. Hillman has provided no documentation for such expenses, equipment or services. M. Hillman has provided no documentation for the assertion that his claim is secured, as required by Fed. R. Bankr. P. 3001(d).

33.

The amounts asserted for commissions allegedly due were not provided for in any agreement between Holdings and M. Hillman, but rather, were invented by M. Hillman himself.

34.

10

Additionally, the amounts asserted for salary allegedly due during the period from April 2010 to April 2011 should be disallowed, as M. Hillman has not provided services for the Debtors during this time period.

35.

Finally, M. Hillman's asserted claim of $12,650,000 in unliquidated damages is without any basis, and it is also *prima facie* invalid. All the amounts asserted by M. Hillman against the Debtors are disputed, and should be disallowed.

*Basis No. 2: Reduction Under 11 U.S.C. 502*

36.

Pursuant to 11 U.S.C. §502(b)(4), a claim by an insider for professional services rendered should not be allowed to the extent that "such claim exceeds the reasonable value of such services." M. Hillman is an insider of the Debtors, and the amounts M. Hillman claims for professional services exceed the reasonable value of the services M. Hillman provided.

*Basis No. 3: Set-Off*

37.

The Debtors assert that they have one or more claims for set-off against the M. Hillman Proof of Claim, including, but not limited to, substantial damages incurred by the Debtors as set forth more fully in the Debtors' counterclaims in Adversary No. 10-05042 pending before this Court.

*Basis No. 4: Failure to Attach Documentation*

38.

The Debtors object to the M. Hillman Proof of Claim insofar as it fails to attach documentation required by the Federal Rules of Bankruptcy Procedure. If a proof of claim is

11

based upon a writing, the writing must be attached to the proof of claim. Fed. R. Bankr. P. 3001.

Upon information and belief, one or more of the claims asserted in the M. Hillman Proof of

Claim, including, but not limited to, the promissory notes referenced in the M. Hillman Proof of

Claim, is based upon a writing. Furthermore, M. Hillman's failure to attach such documentation

tends to confuse the Debtors and this Court because the M. Hillman Proof of Claim attempts to

interweave claims which are based upon a written agreement between M. Hillman and the

Debtors, and claims which are not based upon any agreement between M. Hillman and the

Debtors (such as the claim for commissions).

*Basis No. 5: Failure to File Maritime Lien Claim*

39.

Pursuant to this Court's Order of November 18, 2010, "any creditor which fails to file a

proof of claim for *custodia legis* expenses or pre-petition maritime liens against the Debtors'

vessels on or before December 3, 2010 shall be forever barred from asserting such claim against

the estate" (**Docket No. 615**). Further, the Order stated that "all maritime liens and *custodia*

*legis* expense claims submitted in this matter shall utilize the Proof of Maritime Lien Claim

Form and the use of any other form is hereby prohibited."

40.

Pursuant to this Order, the Debtors mailed to M. Hillman and his counsel a special

Maritime Proof of Claim Form and a Notice, approved by this Court, which stated "YOU ARE

REQUIRED TO FILE A PROOF OF CLAIM IN COMPLIANCE WITH THIS NOTICE AND

USING THE ATTACHED PROOF OF MARITIME LIEN CLAIM FORM <u>EVEN IF YOU

HAVE ALREADY FILED A PROOF OF CLAIM REGARDING YOUR MARITIME LIEN

CLAIM</u>." (**Docket No. 615; Exhibit A**). However, M. Hillman filed no such Proof of Maritime

12

Lien Claim Form regarding his purported secured claim contained in the M. Hillman Proof of Claim, and the bar date of December 3, 2010 has passed. Consequently, to the extent that the M. Hillman Proof of Claim asserts a claim based upon a maritime lien, it is forever barred.

*Basis No. 6: Duplicative Claim*

41.

The Debtors object to amounts asserted in the M. Hillman Proof of Claim which are duplicative of other proofs of claim filed in the case. The M. Hillman Proof of Claim asserts a claim for unliquidated damages in the amount of $12,650,000. Upon information and belief, this claim is duplicative of the claim for unliquidated damages in the same amount contained in the D. Hillman Proof of Claim. To the extent that these claims are duplicative, the Debtors request that they be disallowed.

42.

Therefore, the M. Hillman Proof of Claim should be disallowed in its entirety, or, alternatively, reduced pursuant to 11 U.S.C. §502.

43.

Debtors reserve the right to assert additional objections and defenses to the M. Hillman Proof of Claim.

## COUNT TWO: OBJECTION TO D. HILLMAN PROOF OF CLAIM

44.

The Debtors reaver and re-allege all allegations contained in Paragraphs 1 through 43 above.

13

45.

The Debtors object to the D. Hillman Proof of Claim on the following grounds: 1) the D. Hillman Proof of Claim is *prima facie* deficient and does not include adequate support of the alleged amount of the claims; 2) the D. Hillman Proof of Claim is subject to reduction to the extent that any insider compensation claimed exceeds the reasonable value such professional services rendered; and 3) D. Hillman Proof of Claim is subject to set-off; 4) one or more of the claims asserted in the D. Hillman Proof of Claim are based upon a writing, but no such writing was attached to the D. Hillman Proof of Claim; and 5) the D. Hillman Proof of Claim contains duplicative claims.

<u>Basis No. 1: Prima Facie Deficient</u>

46.

The Debtors object to the D. Hillman Proof of Claim because the D. Hillman Proof of Claim asserts claims for which Debtors did not incur any liability to D. Hillman, and have no responsibility for such claims. *See* 11 U.S.C. §502(b)(1) ("the court . . . shall allow such claim in such amount, except to the extent that – such claim is unenforceable against the debtor . . . under any agreement or applicable law for a reason other than because such claim is contingent or unmatured …"). D. Hillman has provided no grounds for her asserted claim of $12,650,000 in unliquidated damages and it is *prima facie* invalid.

<u>Basis No. 2: Reduction Under 11 U.S.C. 502</u>

47.

Pursuant to 11 U.S.C. §502(b)(4), a claim by an insider for professional services rendered should not be allowed to the extent that "such claim exceeds the reasonable value of such

14

services." D. Hillman is an insider of the Debtors, and the amounts D. Hillman claims for professional services exceed the reasonable value of the services D. Hillman provided.

### *Basis No. 3: Set-Off*

48.

The Debtors assert that they have one or more claims for set-off against the D. Hillman Proof of Claim, including, but not limited to, substantial damages incurred by the Debtors arising from claims asserted by the Debtors against the Hillman Claimants in Adversary No. 10-05042 pending before this Court.

### *Basis No. 4: Failure to Attach Documentation*

49.

The Debtors object to the D. Hillman Proof of Claim insofar as it fails to attach documentation required by the Federal Rules of Bankruptcy Procedure. If a proof of claim is based upon a writing, the writing must be attached to the proof of claim. Fed. R. Bankr. P. 3001. Upon information and belief, one or more of the claims asserted in the D. Hillman Proof of Claim is based upon a writing, and no such writing is attached to the D. Hillman Proof of Claim.

### *Basis No. 5: Duplicative Claim*

50.

The Debtors object to amounts asserted in the D. Hillman Proof of Claim which are duplicative of other proofs of claim filed in the case. The D. Hillman Proof of Claim asserts a claim for unliquidated damages in the amount of $12,650,000. Upon information and belief, this claim is duplicative of the claim for unliquidated damages in the same amount contained in the M. Hillman Proof of Claim. To the extent that these claims are duplicative, the Debtors request that they be disallowed.

15

51.

Therefore, the D. Hillman Proof of Claim should be disallowed in its entirety, or, alternatively, reduced pursuant to 11 U.S.C. §502.

52.

The Debtors reserve the right to assert additional objections and defenses.

## COUNT THREE: OBJECTION TO G. HILLMAN PROOF OF CLAIM

53.

The Debtors reaver and re-allege all allegations contained in Paragraphs 1 through 52 above.

54.

The Debtors object to the G. Hillman Proof of Claim on the following grounds: 1) the G. Hillman Proof of Claim is *prima facie* deficient and does not include adequate support of the alleged amount of the claims; and 2) the G. Hillman Proof of Claim is subject to reduction to the extent that any insider compensation claimed exceeds the reasonable value such professional services rendered; and 3) G. Hillman Proof of Claim is subject to set-off; 4) one or more of the claims asserted in the G. Hillman Proof of Claim are based upon a writing, but no such writing was attached to the G. Hillman Proof of Claim; and 5) G. Hillman asserts a maritime lien claim, but did not submit a maritime lien proof of claim form as required by this Court's Order.

### *Basis No. 1: Prima Facie Deficient*

55.

The Debtors object to the G. Hillman Proof of Claim because the G. Hillman Proof of Claim asserts claims for which the Debtors did not incur any liability to G. Hillman, and has no

16

responsibility for such claims. *See* 11 U.S.C. §502(b)(1). Further, secured claims must be accompanied by evidence that the security interest has been perfected. Fed. R. Bankr.P. 3001(d).

56.

The amounts asserted for commissions and for equipment and services allegedly provided to the M/V *Gulf Fury* are *prima facie* invalid as G. Hillman has provided no documentation for such commissions, equipment or services.

### *Basis No. 2: Reduction Under 11 U.S.C. 502*

57.

Pursuant to 11 U.S.C. §502(b)(4), a claim by an insider for professional services rendered should not be allowed to the extent that "such claim exceeds the reasonable value of such services." G. Hillman is an insider of the Debtors, and the amounts G. Hillman claims for professional services exceed the reasonable value of the services G. Hillman provided.

### *Basis No. 3: Set-Off*

58.

The Debtors assert that they have one or more claims for set-off against the G. Hillman Proof of Claim, including, but not limited to, substantial damages incurred by the Debtor arising from claims asserted by the Debtors against the Hillman Claimants in Adversary No. 10-05042 pending before this Court.

### *Basis No. 4: Failure to Attach Documentation*

59.

The Debtors object to the G. Hillman Proof of Claim insofar as it fails to attach documentation required by the Federal Rules of Bankruptcy Procedure. If a proof of claim is based upon a writing, the writing must be attached to the proof of claim. Fed. R. Bankr. P. 3001.

17

Upon information and belief, one or more of the claims asserted in the G. Hillman Proof of Claim is based upon a writing, and no such writing is attached to the G. Hillman Proof of Claim.

*Basis No. 5: Failure to File Maritime Lien Claim*

60.

Pursuant to this Court's Order of November 18, 2010, "any creditor which fails to file a proof of claim for *custodial legis* expenses or pre-petition maritime liens against the Debtors' vessels on or before December 3, 2010 shall be forever barred from asserting such claim against the estate" (**Docket No. 615**). Further, the Order stated that "all maritime liens and *custodia legis* expense claims submitted in this matter shall utilize the Proof of Maritime Lien Claim Form and the use of any other form is hereby prohibited."

61.

Pursuant to this Order, the Debtors mailed to G. Hillman and his counsel a special Maritime Proof of Claim Form and a Notice, approved by this Court, which stated "YOU ARE REQUIRED TO FILE A PROOF OF CLAIM IN COMPLIANCE WITH THIS NOTICE AND USING THE ATTACHED PROOF OF MARITIME LIEN CLAIM FORM EVEN IF YOU HAVE ALREADY FILED A PROOF OF CLAIM REGARDING YOUR MARITIME LIEN CLAIM." (**Docket No. 615; Exhibit A**). However, G. Hillman filed no such Proof of Maritime Lien Claim Form regarding his purported secured claim contained in the G. Hillman Proof of Claim, and the bar date of December 3, 2010 has passed. Consequently, to the extent that the G. Hillman Proof of Claim asserts a claim based upon a maritime lien, it is forever barred.

62.

Therefore, the G. Hillman Proof of Claim should be disallowed in its entirety, or, alternatively, reduced pursuant to 11 U.S.C. §502.

18

63.

The Debtors reserve the right to assert additional objections and defenses.

## COUNT FOUR: OBJECTION TO BENGAL BARGES PROOF OF CLAIM

64.

The Debtors reaver and re-allege all allegations contained in Paragraphs 1 through 63 above.

### *Basis No. 1: Prima Facie Invalid*

65.

The Debtors object to the Bengal Barges Proof of Claim insofar as it is *prima facie* deficient and fails to comport with the requirements of the Federal Rules of Bankruptcy Procedure for secured claims. Proofs of claim asserting a security interest in property of the debtor must include documentation showing that such security interest has been perfected. Fed R. Bankr. P. 3001(d). The Bengal Barges Proof of Claim fails to meet this requirement because it alleges a security interest but fails to identify the property securing the claim or to attach a copy of any documentation in support of the claim.

### *Basis No. 5: Failure to File Maritime Lien Claim*

66.

Pursuant to this Court's Order of November 18, 2010, "any creditor which fails to file a proof of claim for *custodia legis* expenses or pre-petition maritime liens against the Debtors' vessels on or before December 3, 2010 shall be forever barred from asserting such claim against the estate" (**Docket No. 615**). Further, the Order stated that "all maritime liens and *custodia legis* expense claims submitted in this matter shall utilize the Proof of Maritime Lien Claim Form and the use of any other form is hereby prohibited."

19

67.

Pursuant to this Order, the Debtors mailed to Bengal Barges and its counsel a special Maritime Proof of Claim Form and a Notice, approved by this Court, which stated "YOU ARE REQUIRED TO FILE A PROOF OF CLAIM IN COMPLIANCE WITH THIS NOTICE AND USING THE ATTACHED PROOF OF MARITIME LIEN CLAIM FORM <u>EVEN IF YOU HAVE ALREADY FILED A PROOF OF CLAIM REGARDING YOUR MARITIME LIEN CLAIM</u>." (**Docket No. 615**; **Exhibit A**). However, Bengal Barges filed no such Proof of Maritime Lien Claim Form regarding its purported secured claim contained in the Bengal Barges Proof of Claim, and the bar date of December 3, 2010 has passed. Consequently, to the extent that the Bengal Barges Proof of Claim asserts a claim based upon a maritime lien, it is forever barred.

68.

The Debtors reserve the right to assert additional objections and defenses.

**COUNT FIVE: OBJECTION TO DMH LEASING PROOF OF CLAIM**

69.

The Debtors reaver and re-allege all allegations contained in Paragraphs 1 through 69 above.

70.

The Debtors object to the DMH Leasing Proof of Claim on the following grounds: 1) all the claims are based upon damages involving a lease of property to which Holdings was not a party; 2) the amounts asserted for damages resulting from termination of a lease are subject to reduction under 11 U.S.C. 502(b)(6); and 3) the amounts asserted for structural and

20

environmental damages are *prima facie* deficient because the DMH Leasing Proof of Claim gives no indication of the nature or amount of this claim.

<u>*Basis No. 1: Claim Not Enforceable Against Debtor*</u>

71.

The Debtors object to the DMH Leasing Proof of Claim because the DMH Leasing Proof of Claim asserts claims against Holdings for which Holdings did not incur any liability to DMH Leasing, and has no responsibility for such claims. *See* 11 U.S.C. §502(b)(1)

72.

The DMH Leasing Proof of Claim is not enforceable against Holdings because Holdings was not a party to the lease referenced in the DMH Leasing Proof of Claim. Holdings is not liable for the obligations of its affiliates or subsidiaries.

<u>*Basis No. 2: Reduction Pursuant to 11 U.S.C. 502(b)(6)*</u>

73.

Further, damages asserted in the DMH Leasing Proof of Claim for unpaid post-petition rents are limited by 11 U.S.C. §502(b)(6). 11 U.S.C. §502(b)(6) provides limits for damages asserted by a lessor resulting from a debtor's termination of a lease. Applying these limitations, DMH Leasing's claim for rejection of the lease can be no greater than $72,000.

<u>*Basis No. 3: Prima Facie Deficient*</u>

74.

The Debtor further objects to certain claims in the DMH Leasing Proof of Claim referring to "damages to the structures located on the premises and/or any and all environmental damages." These claims are not accompanied by any amount, and are so vague that they are insufficient to put Holdings on notice of any claim being asserted against the Holdings.

21

75.

Therefore, the DMH Leasing Proof of Claim should be disallowed in its entirety, or, alternatively, reduced pursuant to 11 U.S.C. §502.

76.

The Debtors reserve the right to assert additional objections and defenses.

## COUNT SIX: EQUITABLE SUBORDINATION
## PURSUANT TO 11 U.S.C. 510(b)

77.

The Debtors reaver and re-allege all allegations contained in Paragraphs 1 through 76 above.

78.

Section 510(b) of Title 11 of the United States Code provides that "a claim . . . for damages arising from the purchase or sale of a security [of the debtor or of an affiliate of the debtor]. . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security[.]"

79.

The Purchase Agreement was a sale of securities within the meaning of 11 U.S.C. §510(b).

80.

Upon information and belief, the claims asserted in the M. Hillman Proof of Claim and the D. Hillman Proof of Claim for "unliquidated damages totaling at least $12,650,000" arise from the Purchase Agreement.

22

81.

To the extent that the M. Hillman Proof of Claim and the G. Hillman Proof of Claim assert damages for breaches of the M. Hillman Employment Agreement and the G. Hillman Employment Agreement, such damages "arise from" the Purchase Agreement within the meaning of 11 U.S.C. 510(b), because the M. Hillman Employment Agreement and the G. Hillman Employment Agreement were executed as conditions of the Purchase Agreement.

82.

Therefore, the claims of the Defendants represented by the M. Hillman Proof of Claim, the D. Hillman Proof of Claim, and the G. Hillman Proof of Claim are subject to equitable subordination pursuant to 11 U.S.C. §510(b) insofar as such claims are for damages arising from a purchase of securities.

## COUNT SEVEN: EQUITABLE SUBORDINATION PURSUANT TO 11 U.S.C. §510(c)

83.

The Debtors reaver and re-allege all allegations contained in Paragraphs 1 through 82 above.

84.

Section 510(c) of Title 11 of the United States Code provides that "the court may—under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest."

85.

23

The Fifth Circuit has stated that there are three requirements for equitable subordination:

1. The claimant engaged in inequitable conduct;
2. The misconduct resulted in injury to creditors of the bankrupt or conferring an unfair advantage on the claimant; and
3. Equitable subordination must not be inconsistent with applicable bankruptcy law.[1]

86.

The claims of the Defendants represented by the M. Hillman Proof of Claim, the D. Hillman Proof of Claim, and the G. Hillman Proof of Claim are subject to equitable subordination pursuant to 11 U.S.C. §510(c) insofar as M. Hillman, D. Hillman, and G. Hillman engaged in and were party to inequitable conduct in relation to their employment with the Debtors, the misconduct resulted in substantial injury to the estate of the Debtors and its creditors, and equitable subordination of the Hillman Claimants' proofs of claim would be consistent with applicable bankruptcy law.

87.

As discussed supra in paragraphs 22 – 28, M. Hillman's utilized his position as a fiduciary of the Debtors to confer benefits upon himself and his family. M. Hillman without authorization paid himself hundreds of thousands of dollars out of the Debtors' income. He abused the company expense account to pay for his own recreation activities. Furthermore, he engaged in inequitable conduct that was detrimental to the Debtors and their creditors, including forcing out key personnel, and destroying and misappropriating proprietary data of the Debtors.

88.

---

[1] *Wilson v. Huffman (In re Missionary Baptist Foundation of Amer., Inc.)*, 712 F.2d 206, 212 (5th Cir. 1983); *Benjamin v. Diamond (In re Mobile Steel Corp.)*, 563 F.2d 692 (5th Cir. 1977).

24

The above-described conduct of M. Hillman was inequitable conduct which resulted in detriment to the Debtors and conferred an unjust benefit on M. Hillman.

89.

D. Hillman and G. Hillman participated in and benefited from this same inequitable conduct. Upon information and belief, G. Hillman participated in deleting and misappropriating proprietary data of the Debtor. Furthermore, both D. Hillman and G. Hillman accepted unfair advantages at the expense of the Debtors.

90.

The above-described conduct of D. Hillman and G. Hillman was inequitable conduct detrimental to the estate and other creditors of the Debtors.

91.

Subordination of the Hillman Claimants' proofs of claim would not be inconsistent with applicable bankruptcy law.

92.

Consequently, even if certain of the Hillman Claimants' proofs of claim are allowed, the Debtors request that such claims be subordinated in their entirety to all other allowed claims or interests pursuant to 11 U.S.C. §510(c).

**WHEREFORE**, the Debtors pray that the Court grant the following:

a)     That the claims of M. Hillman, D. Hillman, and G. Hillman, Bengal Barges, and DMH Leasing be disallowed in their entirety, or, alternatively, reduced pursuant to 11 U.S.C. §502;

25

b) To the extent that any of the claims of M. Hillman, D. Hillman, and G. Hillman are allowed, that they be equitably subordinated to all other claims and interests against the Debtors pursuant to 11 U.S.C. §510(b) & (c);

c) All other further, general and equitable relief as this Court deems just and proper.

Respectfully submitted,

LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD

STEWART F. PECK (#10403)
CHRISTOPHER T. CAPLINGER (#25357)
BENJAMIN W. KADDEN (#29927)
JOSEPH P. BRIGGETT (#33029)
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
E-mail: speck@lawla.com; ccaplinger@lawla.com;
bkadden@lawla.com; jbriggett@lawla.com
*Attorneys for the Debtors*

26